### OWENS v. WATTS.

1. Where a ward after his majority, by his attorney in fact, makes a settlement with his guardian and receives and receipts for a sum of money and a claim in judgment as a compromise and settlement in full, the statute of limitations then commences to run in favor of the guardian; and action for account, brought by the ward more than seven years afterwards is barred, he having sufficient information at the time of the receipt to put him upon inquiry as to all matters of fraud now claimed as an avoidance of the settlement.
2. In such action against the executor of the deceased guardian, plaintiff is incompetent to testify to communications made to him by the deceased upon the matter of the compromise and the value of the estate, notwithstanding returns of the guardian had previously been introduced in evidence by the executor.

Before FRASER, J., Laurens, April, 1884.

In this case, Honorable B. C. Pressley, the Judge of the First Circuit, sat in place of the Chief Justice, who had been of counsel in the cause.

To the statement of the case made in the Circuit decree, it will be necessary to add only that the receipt signed by W. G. Rudd, attorney, was not under seal, and that the returns of J. D. Williams, as guardian, were introduced by the executor—matters relied upon by counsel for appellants as bearing upon the points decided by the court. The Circuit decree was as follows:

The case came up on a report of M. A. Carlisle, to whom as special referee all the issues of law and fact had been referred, and exceptions by both plaintiff and defendant. The deceased,

John D. Williams, was appointed guardian of the plaintiff in 1849, and entered into bond for the faithful discharge of his duties as such. He died in June, 1870, leaving a solvent estate, and the defendant is his surviving executor. Plaintiff was born September 20, 1847, and therefore came to the age of twenty-one years September 20, 1868. This action has been brought for a full and final accounting for the estate of the plaintiff, which went into the hands of the guardian, and for the payment of the amount found due. The action was commenced November 14, 1876.

The defendant answering, admits that John D. Williams was the guardian as stated, and took possession of the estate of his ward; but alleges that on December 11, 1868, the guardian paid to his said ward, represented by W. G. Rudd as his attorney in fact under a power executed after he became of age, the sum of $3,440.55 in money, and assigned to him a judgment against one R. S. Phinney, as a settlement in full and compromise of his said guardianship accounts, and pleads the statute of limitations. It will be seen from the dates here given that seven years and a little over eleven months elapsed between the date of the alleged settlement and the commencement of this action.

There is nothing in the pleadings which indicates the particulars in which the plaintiff intended to assail this alleged settlement, but it has been attacked both in argument and by testimony in the progress of the cause mainly, as I understand the parties, on the grounds that the settlement of December 11, 1868, was a mere affirmation of another settlement made between the plaintiff while a minor and John D. Williams in their own names, and which plaintiff was induced to make by his being away from his home in Texas, and badly in want of money; by his being under the influence of strong drink, and having it intimated to him by his guardian that unless he agreed to the settlement, he would run the risk of losing a large part, if not the whole, of this estate. These statements are not corroborated, and depend entirely on the testimony of the plaintiff himself. A wise provision of the law, as I construe it, renders such testimony inadmissible, now that one of the parties to the transaction can no

longer give his version of the occurrences which led to that first agreement.

Whatever may have been the other objections to that agreement, which was made August 23, 1867, it was not binding, being made by the plaintiff during his minority; his subsequent acts show that he did not regard himself as bound by it. His power of attorney to W. G. Rudd, under which the next and last settlement was made, made no allusion to it, and in fact W. G. Rudd, notwithstanding his testimony on this subject, exacted not only the full balance of the money agreed upon on August 23, 1867, but took an assignment of a judgment against R. S. Phinney, dated November 11, 1867, for $2,838.59, with interest from that date, and which was a part of the ward's estate. What that judgment may have been worth may not be material except to show that W. G. Rudd under the power of attorney made a new and independent settlement. It is as well, however, to say that at a date subsequent to the date of this judgment, Phinney gave to Copeland another lien on his property, and on Phinney going into bankruptcy, Copeland got the proceeds of the sale of the property.

That original agreement is important in another aspect. While W. G. Rudd clearly appears from the settlement made by him not to have considered that first agreement as binding, he says that he settled by it, and must have, from its contents and the reasons therein given why he should do what he did do— enter into a compromise and settlement in full of his guardianship accounts with John D. Williams on behalf of his principal, the plaintiff in this case. He had, in that original settlement made by his principal in his minority, sufficient information to put him on the inquiry, and he should have made it. It may be that if he had proceeded at once to investigate, he might have demanded the opening of these accounts so solemnly settled and compromised; but that settlement was in its nature final, and after it was made, the guardian and his ward were at arm's length, and the statute of limitations commenced to run.

The language used by Chancellor Harper, in *Moore* v. *Porcher* (*Bail. Eq.*, 197), that when a trustee does an act which purports to be a final execution of his trust, the statute begins to run from

that time, so as to bar an account, has become the well-established law of the land, and by subsequent cases the principle has been extended to credit done in a public office having cognizance and jurisdiction over the matter of the trust in question. *Motes v. Madden*, 14 *S. C.*, 488. The receipt in this case would have been sufficient, if it had never been filed in the probate's office. There is in this case no subsequent discovery to affect the rights of the parties. Plaintiff either did know, or by proper diligence could have known, everything material to the claim at or soon after the date of this compromise and settlement. I think, therefore, that the statute of limitations is a bar to any further accounting in this case.

At the same time, I incline to the opinion that after the disasters of the war, and the commercial ruin which followed it at the South, the plaintiff was fortunate to have so much of his estate as has been turned over to him by his guardian in this; but it is not necessary to answer the other question in the case. The exceptions are therefore overruled, except so far as are accordant with this decree; and the report of the special referee is set aside; and it is ordered and adjudged, that the complaint be dismissed with costs, to be paid by the plaintiff.

From this decree, the plaintiff appealed upon the following exceptions:

1. Because his honor erred in deciding that the statute of limitations barred the plaintiff's claim.

2. Because his honor erred in deciding that the plaintiff's testimony as to what transpired between him and his guardian in regard to the compromise is inadmissible under section 400 of the code, notwithstanding the defendant introduced and relied upon the acts and declarations of said deceased guardian as to said transactions, and the plaintiff's testimony was simply in reply thereto.

3. Because his honor erred in not sustaining the four exceptions of the plaintiff to the report of the referee, which are as follows: [Omitted, as involving only errors of calculation.] And then confirming said report so modified; the testimony showing most clearly that the plaintiff did not understand his rights, and

that he had no means of ascertaining them fully except from his guardian, who failed to give him the necessary information to enable him to understand his rights.

4. Because his honor erred in not holding that the payments made by the plaintiff, being only a part of his estate, could not operate as in full of his whole estate.

5. Because his honor erred in not holding that the agreement of compromise was a *nudum pactum*, being without any consideration, except the payment to ward of a part of what was due him.

6. Because his honor erred in not holding that it was the duty of the guardian to show that he invested ward's funds as required by law, and not having done so, that he is liable for the whole amount as for money used by him.

7. Because his honor should have held that the alleged release by ward of part of his estate was not binding, because he was a minor at the time and it was not under seal.

*Messrs. Jones & Jones* and *Geo. S. Mower*, for appellants.

*Messrs. Holmes & Simpson, Ball & Watts*, and *John W. Ferguson*, contra.

January 8, 1886. The opinion of the court was delivered by

MR. JUSTICE PRESSLEY. Plaintiff seeks in this case to recover a balance claimed as due to him by his deceased guardian. The answer alleges a compromise with plaintiff by his said guardian and full settlement thereof on December 11, 1868, and pleads the statute of limitations. There is no reply to that answer, nor was there any motion to amend the complaint so as to allege fraud at the time of said compromise and recent discovery of said fraud. Notwithstanding the absence of such allegations, the referee admitted testimony (chiefly of the plaintiff, which was incompetent) tending to show that the said compromise had been obtained from him by false representations by his deceased guardian. The Circuit Judge sustains the plea of the statute of limitations, and further holds that plaintiff had sufficient information, before his final settlement with his guardian, to put him upon inquiry into the matters of fraud which he now attempts to prove.

After careful examination, this court concurs in the decision of the Circuit Judge, and his decree is therefore affirmed and the appeal dismissed.